UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
**JESSICA CALO**,

               Plaintiff,

           - against -

**COMMISSIONER OF SOCIAL SECURITY**,

               Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

20-CV-3559 (AMD)

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff appeals the Social Security Commissioner's decision that she is not disabled for purposes of receiving disability insurance benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

      On April 4, 2017, the plaintiff applied for DIB and SSI with an onset date of September 16, 2016, based on her history of lower neck and back pain. (Tr. 302-03, 423-26.) After the Commissioner denied the claim, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 304-25, 347-51.) ALJ Susan Smith held a hearing on November 7, 2018, at which the plaintiff, represented by counsel, and a vocational expert testified. (Tr. 264-301.) In an April 5, 2019 decision, the ALJ denied the plaintiff's claim. (Tr. 245-57.) She found that the plaintiff suffered from one severe impairment: degenerative disc disease. (Tr. 250.) She concluded, however, that the plaintiff's impairment did not meet any of the applicable listings,

and that she had the residual functional capacity ("RFC") to perform sedentary work. (Tr. 251-52.)

Following the ALJ's decision, the plaintiff submitted additional medical evidence, which the Appeals Council considered, but denied the plaintiff's request for review on June 25, 2020. (Tr. 1-4.) The plaintiff appealed to this Court on August 7, 2020. (ECF No. 1.) The plaintiff and the government cross-moved for judgment on the pleadings. (ECF Nos. 11, 16.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Moreover, the district court should

remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).

## DISCUSSION

The plaintiff claims that ALJ Smith did not give proper consideration to the opinion of her pain management physician, Dr. Vladimir Salomon, in determining her RFC. (ECF No. 12 at 16.) She also challenges the ALJ's reliance on the opinion of consultative examiner Dr. Kristina Basnayake. (*Id*. at 19.) Finally, the plaintiff argues that the ALJ did not give appropriate consideration to her subjective symptoms. (*Id.* at 22.)

**I. RFC Determination**

The ALJ must assess a plaintiff's residual functional capacity "based on all the relevant evidence in the case record." *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. § 416.945(a)(1)). The assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Martinez v. Colvin*, 286 F. Supp. 3d 539, 544 (W.D.N.Y. 2017) (citation and quotation omitted).

*a. ALJ's Evaluation of Dr. Vladimir Salomon*

Until recently, the SSA followed the "treating physician rule," which required the agency to give controlling weight to a treating source's opinion, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). The 2017 regulations changed this standard for DIB applications filed "on or after March 27, 2017." *Id.* § 404.1520c. Under the new regulations, the Commissioner will no longer "defer or give any specific

3

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions, the Commissioner will consider the following five factors: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c). The most important factors are supportability and consistency. After considering these factors, the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* § 404.1520c(b).

On the issue of supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As for consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2). While the ALJ "may, but [is] not required to, explain how [she] considered" the factors of relationship with the claimant, the medical source's specialization, and other factors, the ALJ must "explain how [she]

4

considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id*. § 404.1520c(b)(2) (emphases added). Moreover, "[e]ven though ALJs are no longer directed to afford controlling weight to treating source opinions," the regulations "still recognize the foundational nature of the observations of treating sources." *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (quotations and citation omitted).

At the time of her initial claim, the plaintiff submitted two assessments from Dr. Salomon—one from September of 2016 and one from February of 2019. In 2016, Dr. Salomon wrote a short letter stating that he had "seen [the plaintiff] in [his] office," and that it was his "medical opinion that she [be] excused from work until further notice." (Tr. 759.) ALJ Smith found that Dr. Salomon's opinion was not persuasive because he "did not specify a reason or cite to medical evidence to support his conclusion." (Tr. 254.) This decision was correct. Although Dr. Salomon seemed to suggest, without elaborating, that the plaintiff would be unable to work indefinitely, he did not explain why the plaintiff could not work in 2016, nor do his treatment notes from the relevant time period indicate what led him to this conclusion.

In 2019, Dr. Salomon filled out a "medical assessment of ability to perform work related activities" for the plaintiff. (Tr. 755.) This time, based on two MRIs and a long history of physical examinations, Dr. Salomon diagnosed the plaintiff with "cervical HNP, cervical radiculopathy, lumbar HNP, [and] lumbar radiculopathy." (*Id.*) He opined that the plaintiff could never lift more than 11 pounds, but could frequently lift less than 10 pounds, that she could occasionally carry less than 10 pounds, and that she could never balance, climb, crouch, crawl, kneel or stoop. (Tr. 756.) He also concluded that the plaintiff could not sit for more than three hours or "stand/walk" for more than two hours in an eight hour day, and that she could neither sit

5

nor stand for more than one hour without interruption.  (Tr. 757.)  The plaintiff would need three 30-minute breaks a day, and would miss more than three days of work each month.  (Tr. 758.)

ALJ Smith found this opinion unpersuasive as well.  (Tr. 255.)  While she "agree[d] that in viewing the evidence in the light most favorable to the claimant, her degenerative disc disease would limit her to a range of less than sedentary exertional work," she found that the "longitudinal evidence simply does not support a conclusion that the claimant cannot sit, stand, and/or walk for a total of eight hours during a workday."  (Tr. 255.)  The ALJ based this assessment on the "findings during many treatment visits" with Dr. Salomon and the "normal" results from consultative physician Dr. Kanista Basnayake.  (*Id.*)

However, Dr. Salomon's notes from his extensive treating history with the plaintiff support his conclusions regarding her physical capabilities.  Beginning in 2015, Dr. Salomon treated the plaintiff for persistent neck and lower back problems that appear to have gotten worse over time.  (Tr. 596-604.)  In January of 2016, the plaintiff complained of "increased back discomfort while sitting."  (Tr. 570.)  Trigger point injections helped alleviate her pain over the next several months, but the pain got worse in May of 2016; by July of 2016 it had become so severe that she had "difficulty moving her neck."  (Tr. 554-60; 563-70.)  A cervical MRI from July of 2016 revealed that the plaintiff suffered from "slight disc building" at the C4-C5 and C6-C7 levels, as well as a "small central and left parasagittal disc herniation" at the C5-C6 level.  (Tr. 595.)  A lumbar spine MRI in October of 2016 revealed a "small left-sided disc herniation."  (Tr. 591.)  Dr. Salomon prescribed medication—primarily oxycodone and oxycontin—and physical therapy.  (Tr. 530-70.)  Nevertheless, by January of 2017, the plaintiff's pain was "more progressive," and she sought additional trigger point injections for the pain "radiating to the left

6

hip and thigh." (Tr. 528-30.) Her pain fluctuated through 2017, at times "radiat[ing]" to her legs and at times controlled by the medication. (Tr. 719-38.)

The plaintiff had multiple follow-up visits in 2018 and her pain was effectively managed and "well controlled" under her current prescription regimen and repeated trigger point injections. (Tr. 688-704.) However, in September of 2018, the plaintiff again sought care from Dr. Salomon for persistent low back pain, which was now "worse;" he prescribed her a higher dose of Oxycontin. (Tr. 684.) As the ALJ noted, in November of 2018, the plaintiff's pain again appeared to be "under control" with her new pain prescription. (Tr. 680.) However, Dr. Salomon's treatment notes indicate that in December of 2018, the plaintiff's "pain level remain[ed] high between 7-9 out of 10 despite high dose Oxycontin" and in February of 2019, the plaintiff's "plain levels remain[ed] severe" as she continued to suffer from "low back problems." (Tr. 675-78.) The ALJ did not address the plaintiff's complaints in 2019, nor did she consider the degree of the plaintiff's pain in prior years. Instead, the ALJ focused almost exclusively on the plaintiff's relative periods of comfort, without addressing her repeated periods of pain.

On remand, the ALJ should explain why she found that Dr. Salomon's 2019 report was inconsistent with his treatment notes from the three preceding years, which indicated serious complications from a degenerative disc disease. The ALJ should seek additional information or clarification, if necessary. Finally, the ALJ should consider the additional evidence submitted to the Appeals Council.

b. *ALJ's Evaluation of Dr. Kanista Basnayake*

In determining the plaintiff's RFC, the ALJ relied on the opinion of consultative examiner Dr. Kristina Basnayake. (Tr. 255.) Dr. Basnayake examined the plaintiff on June 7,

7

2017, and found that the plaintiff suffered from back and neck pain, and had "moderate limitation for prolonged sitting, standing, walking, climbing, bending, lifting, carrying, kneeling, squatting, reaching and handling." (Tr. 655.) While ALJ Smith recognized that "moderate is not vocationally specific," she found that Dr. Basnayake's conclusions suggested that the plaintiff retained "residual work capability" and was not "totally disabled." (Tr. 255.) Because she had found Dr. Salomon's opinions "unpersuasive," she relied exclusively on Dr. Basnayake's opinion in determining the plaintiff's RFC.

"It is not obvious that a moderate limitation on sitting translates into a set number of hours." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 487 (S.D.N.Y. 2018). "For this reason, the Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information." *Id.* (citing *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (such terms are "so vague as to render [them] useless")). *See also Garretto v. Colvin*, 2017 WL 1131906, at *21 (S.D.N.Y. Mar. 27, 2017) ("[The consulting physician's] use of the word 'moderate' is vague and provides no support for the ALJ's conclusion that plaintiff engage in these activities for six hours out of an eight hour day."); *Richardson v. Astrue*, 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (consulting doctor's vague conclusion that "[plaintiff's] ability to sit was 'mildly to moderately' impaired . . . provides no support for ALJ's [ ] conclusion that [plaintiff] could perform sedentary work").

Dr. Basnayake's finding of "moderate" limitations on the plaintiff's ability to sit, without more, does not provide substantial support for the ALJ's conclusion that she could sit for six hours a day. *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y.2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."). This is

8

especially true given Dr. Salomon's findings, which were based on his longstanding treatment relationship with the plaintiff. *Young v. Comm'r of Soc. Sec.*, 2014 WL 3107960, at *9 (N.D.N.Y. July 8, 2014) (the conclusion by single consulting physician that claimant had undefined "moderate" limitations in sitting not substantial evidence for finding that claimant could perform sedentary work). On remand, the ALJ should reconsider whether the plaintiff can sit for six hours in an eight-hour workday, as required for sedentary work, developing the record further as necessary.

    c. *Credibility Determination*

On remand, the ALJ should also include her evaluation of the plaintiff's credibility. If a plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in a credibility inquiry." *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citation and quotations omitted). "Credibility determinations must contain specific reasons for the finding on credibility[.]" *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017) (citations and alterations omitted). The ALJ must consider (1) the claimant's daily activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Although the ALJ determined that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence[,]" she did not explain how the plaintiff's testimony was inconsistent with the record.

9

(Tr. 254.) Observing that the plaintiff's treatment "remained fairly conservative," the ALJ did not consider the duration of the plaintiff's treatment, the dosage change in her pain medication over time, or the recent intensity of her symptoms. (Tr. 254.) The plaintiff also testified that "depending upon the day, [she] could sit for only 15 minutes," at a time and has to sit down "within five minutes" of standing. (Tr. 274-76.) The ALJ should consider the plaintiff's testimony in light of Dr. Salomon's records, which include observations that the plaintiff had radiating pain in her hips, thighs and legs and had difficulty sitting.

On remand, the ALJ should also include a specific credibility determination, explain how she balanced the various factors, and identify any inconsistencies between the plaintiff's testimony and the rest of the record. *See Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding legal error when the ALJ did not explicitly refer to or discuss any of the credibility factors).

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                                ANN M. DONNELLY
                                                United States District Judge

Dated: Brooklyn, New York
       August 16, 2021